## No. 88.

### MARTIN WILLIAMS *v.* WILLIAM E. HUGER.

This Court came into existence immediately upon the ratification of the Constitution of 1879 even though the Judges hereof were not authorized to enter upon the discharge of their duties until some seven months later.

Under the Constitution of 1879 the District Courts were continued as Courts of final resort over matters not in excess of $500 until August 1, 1880 and no appeals from judgments rendered by them prior to that date could be had to this Court, though this Court came into existence with the ratification of the Constitution of 1879.

*Appealed from the Sixth District Court.*

*R. G. Hadden*, attorney.

*Carleton Hunt*, attorney.

His Honor Judge Frank McGloin delivered the opinion and decree of the Court in the words and figures following, to wit;

The judgment sought to be appealed from in this case is for less than $500.00 and was rendered May 17, 1880 and signed June 25, 1880. On July 1st, 1880 appellant, the Union National Bank, garnishee, moved in open court for a suspensive appeal to this Court which was granted by the judge *a quo,* being made returnable on the first return day thereof.

Appellee has moved to dismiss on the ground that the judgment in question was final and not appealable, and that this Court is without jurisdiction. The question to be determined is, whether judgments rendered and signed before August 1st, 1880, are subject to our review. In coming to a conclusion upon this question, we must examine and interpret article 259 and 266 of the Constitution now in force. The former article reads as follows;—"In order that no inconvenience may result to the public service from the taking effect of this constitution, no office shall be superceded thereby, that the laws of the state relative to the duties of the several officers—executive, judicial and military—shall remain in full force, though the same be

contrary to this constitution, and the several duties shall be performed by the respective officers of the state, according to the existing laws, until the organization of the government under the constitution, and the entering into office of the new officers, to be appointed, or elected under said government and no longer." Article 266, is as follows:—The Judge of the Courts of Appeal, District Judges, City Judges, District Attorney, Coroner, Clerks of Court, Sheriffs, Recorder of Mortgages, and Register of Conveyances, all of whose election and appointment are provided for by this Constitution shall only enter upon the discharge of their duties of their respective offices on the first Monday of August 1880. The present incumbents shall continue until then, in the performance of the duties of their respective offices, and the enjoyment of the emoluments thereof, as now prescribed by law."

Article 262 provided how and where this constitution should come into effect and its provisions were complied with, and the constitution became operative before the rendition and signature of the judgment in question. The same general reasons, which dictated the calling of a convention, to prepare a new organic law would demand its being put into operation, without delay. If there were evils redressed, and reforms adopted, the people should have the benefit of such changes as speedily as possible. The presumption, therefore, should be in favor of the plenary and immediate effect of the adoption as against the restrictive or postponed.

The language of the constitution, creating the courts of appeal is not materially different from that creating the other tribunals of the state. In default of special provisions to the contrary, all of these, would have come into being at the same moment. Article 266 does not say that the Court of Appeals for this Parish shall not exist until the first day of August, 1880. It merely declares at what date its judges shall enter upon the discharge of their duty.

We must not confound the judges who, at any particular time, preside over a court, with the court itself. The former

may resign, or be removed by death, or other means, and other men come to fill their places. There may even be a hiatus in the incumbency of a tribunal without affecting the existence, or jurisdiction thereof. We, therefore, cannot consider the provisions of article 266, as going beyond what is explicitly expressed, and justifying the assumption that because, for a time, the judges are withheld from the performance of their duties, that, therefore, the court itself is to be during the same period non-existent. The framers of the constitution were familiar with the English language. Had they intended to affect the court, as well as the judges by this provision, they would have expressed such intention. We are bound to respect that abstention, and to be careful not to endeavor to do what they they have left undone.

But we are not without an expression of intention, in this connection, on the part of the convention. The Constitution, by changes in the jurisdiction of the courts, as before existent, gave to this tribunal the right of review, over a number of cases pending upon the docket of the old Supreme Court, under the constitution. The new Supreme Court was designed to go into operation immediately upon the ratification of that instrument. As a fact, it commenced the exercise of its functions in January, 1880. Article 129 of the Constitution, while dealing specially with this Court, directed this new Supreme Court to "at once transfer said causes to the Court of Appeals." This provision certainly negatives emphatically the idea that there was to be no Court of Appeals for this Parish until nearly seven months after the duty of transferring causes thereto developed peremptorily upon the Supreme Court. It will be noted, however, that article 266 covered all the officers designated in the constitution, whose service was to be rendered in the parish of Orleans, of these, the Court of Appeal is the only one, which was absolutely a new creation. In other words, all the others, had proto-types, or. predecessors, under the old organic law. The new Constitution made radical changes in the character of all these officers, and particularly so in relation to the judiciary of this parish, and its executive officers.

The new organic law would come into effect during the season of fullest commercial and other activity in the City of New Orleans and at the early part of the annual term of its District Court. These Courts were to be then particularly busy disposing of the immense legal business of a great commercial city. It was feared that by attempting to affect radical changes at such a time, confusion would be the result, occasioning annoyance, expense and delay to litigants, and others interested. It was also feared that the new system could not be satisfactorily inaugurated if the attempt to install it were made at such a time. It was therefore deemed wise that to delay the change, until the usual lull in general business of the city might, be expected and the Courts were having their vacation. The first day, of the second month of this vacation was selected, for all these reasons, leaving three months remaining of the vacation in which at leisure to adopt matters to the new order of things. It was such considerations which principally influenced the vote, of the members of this Court who had the honor to participate in the deliberations of that party, and these views were by him expressed in the debate when this article was up for discussion. When, there were offices already existing, the incumbents whereof were performing the duties assigned, by the new organic law to any of the officers named in article 266, what this article failed in doing, so far as the postponement of the immediate coming into being of the new offices was concerned, was accomplished by article 259. It is by virtue of the enunciation of this article, that, "No office shall be superceded" that the office as well as the officer, was affected. But the Court of Appeals, being absolutely a new creation and so incapable of superceding any then existing office in the parish of Orleans, it comes not within the scope of the last named article. The Civil District Courts for this Parish, however, was different. It had a predecessor in the various District Courts of the Parish, as created by the Constitution of 1868. And it therefore came under the influence of both articles in question. It follows, not only, that the Civil District Court did not exist until

August 1st, 1880, but also, that the old District Courts of the parish did. These were organized under the Constitution of 1868, and the new instrument did not pretend to define or modify their jurisdiction, or authority. It is clear that the former Constitution governed upon all questions pertaining to these old courts, so long as they existed. This conclusion would be the only logical one. Even were the new organic law silent upon the subject. But it has not been silent. On the contrary, Article 259 expressly declares with regard to its old officers retained, that as to them, the laws of the state "shall remain in full force though the same be contrary to this Constitution, and the several duties shall be performed by the respective officers of the State, according to existing laws, until the organization of the government under this constitution, and the entering into office of the new officers, etc." Coming to the conclusion, therefore, that so long as the old District Courts for this parish remain in existence they were governed as to jurisdiction etc., by the Constitution of 1868, which was included in the terms "laws of the state" and "existing laws" we must give effect to the provisions of that Constitution, giving said courts final jurisdiction up to the sum of $500.00. So, upon the date of the rendition and signature of the judgment in question as to this particular controversy, the former Sixth District Court was a tribunal of last resort. Its decree became and was final, and the property of the plaintiff and we are without authority to disturb it.

For these reasons it is ordered that the motion to dismiss be granted, and accordingly that the appeal herein be dismissed at appellant's costs.

I concur, W. H. R.